UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO:11-20587-CR-SCOLA

UNITED STATES OF AMERICA,

    Plaintiff,
vs.

**GALA M.   ONOFRE,**

    Defendant.
_____/

### MOTION FOR DOWNWARD VARIANCE FROM THE GUIDELINE RANGE AND REQUEST FOR REASONABLE SENTENCE AND INCORPORATED MEMORANDUM OF LAW

The Defendant, Gala Onofre, through undersigned counsel, files this Motion for Variance from the Guideline Range and Request for Reasonable Sentence and Incorporated Memorandum of Law and in support thereof states:

### INTRODUCTION

The era of mechanized application of the sentencing guidelines to formulate an appropriate sentence is over.   The United States Supreme Court's recent decision in ***Pepper v. United States***, ___ U.S. ___ 131 S. Ct 1229 (2011) makes it abundantly clear that an era of individualized sentencing has begun and appears to be here to stay.   It has been the law for several years that the sentencing guideline range is not presumptively reasonable, is advisory only, and is but one and certainly not the most important factor the court must consider in fashioning a reasonable sentence.   ***Rita***

*v. United States*, 127 S. Ct. 2456 (2007); *Gall v. United States*, 128 S. Ct. 586 (2007). In *United States v. Hunt*, 459 F. 3d 1180 (11th Cir. 2006), the court held that there are "many instances" where the guideline range will <u>not</u> yield a reasonable sentence. *Id.* at 1184. The court held that District Courts are obligated to impose a reasonable sentence <u>regardless</u> of the guideline range, so long as the guideline has been considered. *Id*.

In the United States Supreme Court's most recent decision minimizing the impact of the guidelines on imposing a reasonable sentence, the court stated:

> "It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States*, 518 U.S. 81 (1996). Underlying this tradition is the principle that "<u>the punishment should fit the offender and not merely the crime</u>." *Williams*, 337 U.S. at 247, 69 S. Ct. 1079.

*Pepper supra*. 1239-40. [Emphasis added]. The court went on to say:

> In particular, we have emphasized that "[h]ighly relevant if not essential-to [the] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics." *Id.* at 247, 69 S. Ct. 10-79. Permitting sentencing courts to consider the widest possible breath of information about a defendant "ensures that the punishment will suit not merely the offense but the

2

> individual defendant." *Wasman v. United States*, 468 U.S. 559 (1984).

*Id*. at 1240. While courts should give "respectful consideration" to the now advisory guidelines and their accompanying policy statements, the court in *Pepper* stressed that post-*Booker* decisions makes clear that a district court may in appropriate cases impose a non-guideline sentence based on a disagreement with the Sentencing Commission's views. *Pepper*, supra. at 1247.

With the exception of unconstitutional considerations (e.g., race, sex, etc.) there is no limit to the type and nature of information a court may consider in imposing a reasonable sentence. This point was made abundantly clear by the United States Supreme Court in the opening paragraph of its decision in *Pepper*, *supra*.:

> This court has long recognized that sentencing judges "exercise a wide discretion" in the types of evidence they may consider when imposing sentence and that "[h]ighly relevant, if not essential-to [the] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics." *Williams v. New York*, 337 U.S. 241, 246-247, 69 S. Ct. 1079, 93 L. ED.1337 (1949). Congress codified this principle at 18 U.S.C. §3661, which provides that "[no] limitation shall be placed on the information" a sentencing court may consider concerning the [defendant's] background, character and conduct" and at §3553(a), which sets forth certain factors that

>sentencing courts must consider, including "the history and characteristics of the defendant." §3553(a)(1)

*Pepper*, *supra*. at 1235.

## ARGUMENT

Considering the factors set forth in 18 U.S.C. §3553(a) and the statutory requirement that this court must sentence Ms. Onofre to a sentence sufficient, but not greater than necessary to comply with the purposes set forth in §3553(a), it is respectfully submitted that a significant variance below the prescribed guideline range of 46 to 57 months is appropriate. Ms. Onofre was a therapist who worked for Biscayne Milieu conducting group therapy sessions. She was instructed and directed by others to create fraudulent notes for patients who did not attend therapy sessions. Significantly, Ms. Onofre did not receive any extra benefits or a share of the proceeds from the fraudulently obtained Medicare payments but rather received her normal weekly salary. Moreover, Ms. Onofre's compensation was not based upon the number of patients seen nor the number of reports submitted.

Given Ms. Onofre's history and characteristics, a sentence of 46 months, the low end of her guidelines, is a sentence far greater than necessary to comply with the purposes set forth in §3553(a). Among the most critical factors warranting a downward variance are the following: (a) a downward variance would avoid an

unwarranted sentence disparity between Ms. Onofre and co-defendants Debora De Jesus and Thomas Hammer; (b) Ms. Onofre's agreement and willingness to cooperate; (c) as a first time offender, any jail sentence imposed on Ms. Onofre would be more effective as a deterrence than it would for a repeat offender; (d) given Ms. Onofre's age, she presents a very low risk of recidivism regardless of the severity of her sentence; (e) Ms. Onofre has a spotless and continuous employment history; (f) Ms. Onofre's lack of criminal history or conduct and good character and (g) Ms. Onofre's status as a non-citizen will cause any sentence imposed on her to be more punitive than an equal sentence imposed on a United States citizen.

**(a)   SENTENCING DISPARITY**

Co-defendants Thomas Hammer and Debora De Jesus, like Ms. Onofre, were therapists whose guideline ranges were identical to that of Ms. Onofre (46 to 57 months). Notwithstanding the fact that Mr. Hammer continued to perpetrate fraud at Biscayne Milieu after he was visited and interviewed by agents, this court granted a variance request and sentenced him to 24 months in prison. Co-defendant De Jesus was also sentenced to 24 months despite the facts that the government characterized her conduct as "considerably more egregious than that of other therapist and subordinate clinical staff." Moreover, the evidence at trial demonstrated that co-defendant De Jesus chronically show up late for group therapy

5

sessions being billed to Medicare or did not show up at all; would show up either drunk or high for group therapy sessions billed to Medicare and carried on a romantic relationship with a patient at Biscayne Milieu who was suffering from a mental illness so acute that he required PHP treatment. The government characterized co-defendant De Jesus as one of the "go to" people at Biscayne Milieu to create after-the-fact false group therapy notes for therapist no longer working at Biscayne Milieu. Despite all of these facts and circumstances, co-defendant De Jesus was granted a variance and sentenced to 24 months in prison. While Ms. Onofre is not justifying her criminal conduct in this case, as clearly demonstrated by her guilty plea and acceptance of responsibility, her criminal conduct did not rise to the level of co-defendant De Jesus or Hammer, and she should therefore be given a greater variance than that given to those co-defendants.

### (b) MS. ONOFRE'S COOPERATION

Ms. Onofre agreed to cooperate, as noted in her plea agreement and was in fact debriefed. Through no fault of hers, the government chose not to call Ms. Onofre as a witness at trial despite the fact that she was ready, willing and able to do so. Ms. Onofre's willingness to cooperate can justify a variance under §3553(a). Even when the government does not file a §5k motion, a court may consider efforts to cooperate to justify a variance. See ***United States v.***

*Fernandez*, 443 F.3d 19 (2d Cir. 2006).   See also *United States v. Doe*, 213 Fed. Appx. 660, 663 (10th Cir. 2007)(unpub.)(A district court should address cooperation  as part of its §3553(a) analysis even in the absence of a 5K1.1 motion when raised by the defendant:   See also *United States v. Ochoa-Ramos*, 2008 WL2062341, at 3 (E.D. Wis. 2008).

### (c)   MS. ONOFRE'S LACK OF CRIMINAL HISTORY OR CONDUCT SUGGESTS A LOW RISK OF RECIDIVISM.

Ms. Onofre not only has no prior convictions, she has engaged in no prior criminal conduct nor has she had any contact with law enforcement at any time in her life.   Many courts have recognized that any jail sentence (even a short sentence) has a much more significant effect on a first offender than on someone who has prior convictions or prior contact with law enforcement.   See *e.g.*, *United States v. Baker*, 445 F.3d 987 (7th Cir. 2006)("Significant is the district courts finding that a prison term would mean more to Mr. Baker than to a defendant who previously had been imprisoned."); *United States v. Willis*, 479 F. Supp. 2d 927 (E.D.Wis. 2007)("A downward variance from 60 months to one year and one day justified in part because sentence provided a substantial punishment for someone like defendant, who had never before been to jail"); *United States v. McGee*, 479 F. Supp. 2d 910 (E.D. Wis. 2007)(downward variance from range of 21 to 27 months to one year ane one day imposed because the defendant "had never before been to

7

prison and generally a lesser period of imprisonment is required to deter a defendant not previously subject to a lengthy incarceration than is necessary to deter a defendant who has already served some serious time yet continues to reoffend."); ***United States v. Cull***, 446 F. Supp. 2d 961 (E.D. Wis. 2006)(downward variance from range of 10 to 14 months to two months jail followed by four months home confinement justified because "defendant had never been confined before so [two months jail time] was sufficient to impress upon him the seriousness of the offense and deter others under similar circumstances.") ***United States v. Qualls***, 373 F. Supp. 2d 873, 877 (E.D. Wis. 2005). Moreover, a first time offender sentenced to any prison time is much less likely to recidivate than all other offenders. See ***United States v. Cabrera***, 567 F. Supp. 2d 271, 279 (D. Mass. 2008)(the court cited the Sentencing Commission's Report, Recidivism and the First Offender (May 2004) suggesting that individuals with zero criminal history points are less likely to recidivate than all other offenders.)

### (d)  MS. ONOFRE'S AGE SUGGESTS A LOW RISK OF RECIDIVISM.

Ms. Onofre's age suggests a lower risk of recidivism and therefore even a non-incarcerative sentence would be sufficient to satisfy §3553(a)(2)(B) and (C)'s requirement that the sentence afford adequate deterrence to criminal conduct and protect the public from further crimes of the defendant. Defendants "over the age of

8

40...exhibit marketedly lower rates of recidivism in comparison to younger defendants. See *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines* at 12, 28 (2004) ("Recidivism rates decline relatively consistently as age increases"). Ms. Onofre is 51 years old with no prior criminal record whatsoever. See **Simon v. United States**, 361 F. Supp. 2d 35 (E.D.N.Y. 2005)(under the guidelines, age was not normally relevant to sentencing. §5H1.1. Post **Booker,** however, at least one court noted recidivism drops substantially with age.) **U.S. v. Groos**, 2008 WL 5387852 (N.D.Ill.,2008) (district court considered that lengthy incarceration for crimes involving shipping of embargoed goods were ineffective to the aid of deterrence and the period of uncertainty resulting from the four-year delay in prosecuting the case against defendant provided significant punishment which merited a non-guidelines sentence. Court imposed sixty days incarceration and one year supervised release with a fine, despite guidelines recommendation of 24 - 30 months); **U.S. v. Adelson**, 441 F. Supp. 2d 506 (S.D.N.Y. 2006) (where guidelines called for life sentence for securities fraud, court imposed forty-two month sentence partly based on "considerable evidence that even relatively short sentences can have a strong deterrent effect on prospective, "white collar offenders" and the government failed to present any evidence or empirical studies that a sentence of more than 3 ½ years was necessary

9

to achieve the retributive and deterrence objectives of §3553(a)), *U.S. v. Qualls*, 373 F. Supp. 2d 873, 877 (E.D. Wis. 2005) (generally, a lesser prison term is sufficient to deter one who has not been subject to prior lengthy incarceration). *U.S. v. Hughes*, 825 F. Supp. 866 (D.Minn.1993) (the court noting that "the non-rehabilitation purposes of incarceration-retribution, deterrence and incapacitation-would all be more than adequately served by a far shorter sentence. Both society and the defendant will pay a dear cost for this sentence and receive very little in return.")

### (e) MS. ONOFRE'S EDUCATIONAL AND EMPLOYMENT HISTORY.

Ms. Onofre has, throughout her life, made extraordinary efforts to educate herself and has a very strong history of employment. After obtaining a Bachelors Degree in Psychology in 1976 in Bogota, Colombia, Ms. Onofre immigrated to the United States and attended Xavier University in Cincinnati, Ohio for six months where she received a certificate in English language. Subsequently, she obtained a Masters of Science Degree in Education, with a specialization in mental health counseling from the University of Miami. Ms. Onofre is a licensed mental health counselor. In addition, Ms. Onofre has taken an unusual number of courses in her field all of which are summarized in paragraphs 166, 167 and 168 of the Presentence Investigation Report. A defendant's strong history of employment has been relied

upon to justify a downward variance.  See *e.g., **United States v. Ruff***, 535 F. 3d 999 (9th Cir. 2008); ***United States v. Fuson***, 215 Fed. Appx. 468 (6th Cir. 2007).

    **(f)    MS. ONOFRE'S GOOD CHARACTER**

Ms. Onofre's otherwise law-abiding and productive life, devotion to her family and community and impeccable reputation in her community are factors in and of themselves which warrant a downward variance from the prescribed guideline range.  A defendant's otherwise good character has repeatedly been relied upon by courts to justify a variance below the prescribed guideline range.  In ***United States v. Autery***, 555 F.3d 864 (9th Cir. 2009), the court affirmed the District Court's *sua sponte* variance to probation from a recommended guideline range of 41 to 51 months, in part, citing the defendant having no history of substance abuse, no interpersonal instability, no sociopathic or criminalistic attitudes, being motivated and intelligent and having the support of his wife and children.  The court noted that these factors "undoubtedly constitute 'history and characteristics of the defendant'" as contemplated in 18 U.S.C. §3553(a)(1). *Id*. at 874.  In ***United States v. Wachowiaka***, 412 F. Supp. 2d 958 (E.D. Wisconsin 2006), *aff'd* 496 F.3d 744 (7th Cir. 2007), the court granted a downward variance from the guideline range of 121 to 150 months and sentenced the defendant to 70 months in part because "the guidelines failed to consider defendant's otherwise outstanding character, as

11

depicted in many supportive letters discussed above. As I have noted in previous cases, while §3553(a)(1) requires the court to consider the character of the defendant, the guidelines account only for criminal history. In cases where the defendant led an otherwise praise worthy life, the court should consider a sentence below the advisory guideline range." *Id*. at 963. In the instant case, the overwhelming number of character reference letters from Ms. Onofre's family, friends, and members of her church speak volumes about her character and her otherwise law-abiding life. See *e.g.*, **United States v. Pauley**, 511 F. 3d 468 (4th Cir. 2007).

### (g) MS. ONOFRE'S IMMIGRATION STATUS

Unlike similarly situated defendants who are United States citizens, Ms. Onofre will be punished more significantly, despite an equal sentence, due to the fact that she is not a United States citizen. The instant conviction will no doubt cause Ms. Onofre to be banished from this country where she has lived for over 20 years leaving behind virtually all of her family and friends. See ***Jordan v. DeGeorge,*** 341 U.S. 223, 232 (1951) (Jackson, J.)(deportation is "a life sentence of banishment in addition to the punishment which a citizen would suffer from the identical acts."); **Lyons v. Pearce**, 298 Or. 554,565, 694 P.2d 969, 977 (1985) ("A deported alien may be required to sever family ties, become impoverished and

return to a society in which he no longer can function...It portends drastic consequences in many cases. It is in all cases a life sentence of banishment.")[emphasis added]. Moreover, Ms. Onofre's immigration status will cause her to face more sever restrictions in prison than a non-alien. See *e.g*. ***United States v. Navarro-Diaz***, 420 F. 3d 581 (6th Cir. 2005)(court noted that defendant would be punished more than a citizen because he is not eligible for six months of half-way house at the end of his sentence);***United States v. Davoudi***, 172 F.3d 1130 (9th Cir. 1999)(court has discretion to depart downward because a deportable alien may be unable to take advantage of a minimum security designation and up to six months of home confinement at the end of his sentence); ***United States v. Charry-Cubillos***, 91 F.3d 1342, 1344 (9th Cir. 1996)(same); ***United States v. Farouil***, 124 F.3d 838 (7th Cir. 1997)(court may consider fact that as a deportable alien, defendant ineligible for home detention, community confinement, work release, intermittent incarceration, or minimum security designation); see also ***United States v. Pacheco-Soto***, 386 F. Supp. 2d 1198, 1205 (D.N.M. 2005); ***United States v. Bakeas***, 987 F. Supp. 44 (D. Mass 1997); ***United State v. Smith***, 27 F. 3d 649 (D.C. Cir. 1994).

## **CONCLUSION**

Even a non-incarcerative sentence such as house arrest or probation has been recognized by the United States Supreme Court as carrying extremely significant consequences:

> Offenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty...Inherent in the very nature of probation is that probationers do not enjoy the absolute liberty to which every citizen is entitled....Probationers may not leave the judicial district, move, or change jobs without notifying and in some cases receiving permission from their probation officer or the court.  They must report regularly to the probation officer, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony and refrain from excessive drinking.  U.S.S.G. §5B1.3.  Most probationers are also subject to individual 'special conditions' imposed by the court.

***Gall v. United States****, supra* at 595-596.

As noted, the United States Supreme Court has recently reaffirmed the proposition that this court's sentence must be tailored to the history and characteristics of the individual as much as the offense itself.  Ms. Onofre began working at Biscayne Milieu with all good intentions and slowly but surely began to take shortcuts and ultimately falsified reports.  However, Ms. Onofre is generally a good person.  Ms. Onofre is exactly the type of individual this court should show as much mercy as it possibly can.  As Supreme Court Justice Anthony Kennedy stated

before the Senate Judiciary Committee on February 14th, 2007: "Our sentences are too long, our sentences are too severe, our sentences are too harsh...[and because there are so few pardons] there is no compassion in the system, there is no mercy in the system."  In a speech to the A.B.A. in 2003, Justice Kennedy also stated: "A country which is secure in its institutions, confident in its laws, should not be ashamed of the concept of mercy."  Given all the facts and circumstances of the instant case, it is respectfully requested that a significant variance below the prescribed sentencing guideline range would be both fair and reasonable.

**WHEREFORE**, based on above and foregoing, the defendant respectfully requests that this court grant her request for a downward variance from the prescribed guideline range.

Respectfully submitted,

ROBBINS TUNKEY, ROSS, AMSEL,
RABEN, & WAXMAN, P.A.
2250 S.W. 3rd Avenue, 4th Floor
Miami, Florida   33129
Telephone: 305-858-9550
Fax: 305-858-7491
Email: bobamsel@crimlawfirm.com

By:    /s/ Robert G. Amsel
       ROBERT G. AMSEL
       FLORIDA BAR NO. 0349690

15

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this 2nd day of October, 2012, I electronically filed the foregoing document with the Clerk of Court and provided copy to all counsel of record using CM/ECF and Probation Officer Sara M. Garcia via U.S. Mail at the U.S. Probation Office, 400 No. Miami Avenue, 9th Floor South, Miami, Florida 33128.

        ROBBINS, TUNKEY, ROSS, AMSEL,
        RABEN, & WAXMAN, P.A.


        By:   /s/ Robert G. Amsel
              ROBERT G. AMSEL
              FLORIDA BAR NO. 0349690